**Lucia Helena HILL, Appellant,**

v.

**Dennis Michael HILL, Appellee.**

No. 07–97–0156–CV.

Court of Appeals of Texas, Amarillo.

June 24, 1998.

James W. Wester, Sally Holt Emerson, Underwood, Wilson, Berry, Stein & Johnson, P.C., Amarillo, for appellant.

Jon R. Waggoner, Boren R. Waggoner, Amarillo, for appellee.

Before DODSON and QUINN and REAVIS, JJ.

QUINN, Justice.

Lucia Helena Hill (Lucia) appeals from a final divorce decree. The latter ended her marriage to Dennis Michael Hill (Michael). Her points of error fall into five general categories. The first concerns the trial court's failure to enter additional findings of fact and conclusions of law, the second, the court's failure to enter findings with respect to the classification of certain property as separate property, the third, the court's mischaracterization of certain property as separate property, the fourth, the court's failure to provide a just and right division of the community estate, and the fifth, the court's division of property "irrespective of the characterization" of the property. We modify the judgment and affirm it as modified.

### Failure to File Additional Findings and Conclusions

■ Five days after the court signed the divorce decree, Lucia requested findings of fact and conclusions of law. Same were filed by the court approximately two weeks later. Thereafter, a request for additional findings and conclusions was tendered. Lucia wanted the court to specifically determine the "net values" of approximately 48 items of personalty ranging from the family's house to the soap and cleaning supplies located therein. So too was the trial judge asked to "state in writing what percentage of the net community estate each party should have received in order to achieve a just and right division of the community estate." In response, the court simply addressed the latter issue and stated that a "just and right division of the community estate would have given each party fifty percent (50%) of the net community estate." Before us, Lucia complains of the

court's decision to forego assigning "net values" to the 48 items. Allegedly, the court was obligated to do this so that she could determine whether she received her fifty percent of the community estate. And, because the court did not do so, she allegedly suffered harm. We disagree and overrule the related point.

#### a. Authority

■ A trial court's duty to enter additional findings of fact and conclusions of law is finite. That is, it need only enter additional findings and conclusions on ultimate or controlling issues. *ASAI Corp. v. Vanco Insulation Abatement, Inc.*, 932 S.W.2d 118, 122 (Tex.App.—El Paso 1996, no writ); *Kirby v. Chapman*, 917 S.W.2d 902, 909 (Tex. App.—Fort Worth 1996, no writ); *Rafferty v. Finstad*, 903 S.W.2d 374, 376 (Tex.App.— Houston [1st Dist.] 1995, writ denied); *Wallace v. Wallace*, 623 S.W.2d 723, 726 (Tex.Civ. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). Furthermore, in matters of property division, the ultimate or controlling issue is whether the division was just and right. *Rafferty v. Finstad*, 903 S.W.2d at 376. The values of the property being divided, though related to the ultimate issue, is not a controlling issue. *Id.; see Finch v. Finch*, 825 S.W.2d 218, 221 (Tex.App.—Houston [1st Dist.] 1992, no writ) (stating that the values are "evidentiary to the ultimate issue"); *Wallace v. Wallace*, 623 S.W.2d at 725 (stating the same). Thus, the court need not enter findings or conclusions with respect to them.

#### b. Application

Here, Lucia asked the court to enter findings which established the value of 48 items of property. To the extent that she wanted the court to assign values to the property, she was asking it to enter findings upon evidentiary, as opposed to ultimate or controlling, issues. *Rafferty v. Finstad, supra; Finch v. Finch, supra; Wallace v. Wallace, supra.* That was something which the court was not obligated to do. Thus, the court did not err in refusing the request.[1]

---

1. We eschew Lucia's invitation to have us adopt Justice O'Connor's opinion in *Rafferty*. It is not

only a dissenting opinion but also one which

### Failure to Enter Findings Classifying Property as Separate

Lucia's next argument concerns the characterization of Norwest Bank Certificate of Deposit No. 4468(CD) and Norwest Savings Account No. 41659–2 (Account) as Michael's separate property. The two items were expressly "confirmed" to be his separate property in the divorce decree. However, the findings of fact and conclusions of law subsequently entered by the court expressly referred to neither. Instead, the court simply stated in the document that "[r]eference is made to this Court's Decree of Divorce dated February 14, 1997, as to its findings on the community and separate estates of the parties." Given these circumstances, Lucia posits that her ex-husband waived any right to claim that the CD and Account were his separate property on appeal. We disagree and overrule the related point of error.

#### a. Authority

According to Texas Rules of Civil Procedure 296 and 297, the court is obligated (in a non-jury trial) to enter findings of fact and conclusions of law when same are timely requested. Whether the findings and conclusions could be recited in the court's judgment was once a matter of debate, however. While some appellate courts determined that they could not, *see, e.g., City of Houston v. Houston Chronicle Publ'g Co.,* 673 S.W.2d 316, 324 (Tex.App.—Houston [1st Dist.] 1984, no writ), others held that they could. *See, e.g., Farr v. Sun World Sav. Ass'n,* 810 S.W.2d 294, 298 (Tex.App.—El Paso 1991, no writ); *Wallis v. Liberty Mut. Ins. Co.,* 465 S.W.2d 422, 426–27 (Tex.Civ.App.—Dallas 1971, writ ref'd n.r.e.); *Norris v. Vaughn,* 278 S.W.2d 582, 585 (Tex.Civ.App.—Amarillo 1955, no writ); 4 R. MCDONALD & F. ELLIOT, TEXAS CIVIL PRACTICE IN DISTRICT AND COUNTY COURTS § 16.05 (1984) (stating that the particular form of the findings is not specified and their insertion in the judgment should satisfy the requirement). Indeed, this court itself noted long ago in *Norris* that

expressly recognizes that it deviates from settled law.

**2.** If findings are entered upon less than all the elements of a theory, then the omitted elements

though the better practice was to express them in a separate document, they could be included in the judgment. *Norris v. Vaughn,* 278 S.W.2d at 585 (quoting *Stahl v. Westerman,* 250 S.W.2d 325 (Tex.Civ.App.—San Antonio 1952, no writ)).

■ Eventually, the preferred practice was adopted by the Texas Supreme Court in 1990. During that year, it enacted Rule 299a of the Texas Rules of Civil Procedure. The latter states that:

> [f]indings of fact shall not be recited in a judgment. If there is a conflict between findings of fact recited in a judgment in violation of this rule and findings of fact made pursuant to Rules 297 and 298, the latter findings will control for appellate purposes. Findings of fact shall be filed with the clerk of the court as a document or documents separate and apart from the judgment.

Thus, the inclusion of findings in a judgment is now improper when the litigant requests same via Rule 296. Instead, the ultimate facts relied upon by the court in resolving the dispute must be specifically stated in a separate document.

■ Next, once findings are entered, they serve to "form the basis of the judgment upon all grounds of recovery and of defense embraced therein." TEX.R. CIV. P. 299. Furthermore, "the judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings . . . ." *Id.* In other words, one waives (for appellate purposes) a theory of recovery or defense unless the proponent of the theory secures a finding on the theory or an element of the theory.[2] And, the concept works to the detriment of both appellant and appellee. For instance, an appellant arguing that the trial court erred in rejecting his defense must make sure that he requested the court to make a finding upon the defense. If he does not, then the defense is waived. *Augusta Dev. Co. v. Fish Oil Well Serv'g Co.,*

are presumed found. TEX.R. CIV. P. 299. This, of course, assumes that evidence exists which supports the presumed findings.

761 S.W.2d 538, 542 (Tex.App.—Corpus Christi 1988, no writ). Similarly, if the appellee fails to request findings upon all his theories of recovery he is precluded from arguing that the court erred in failing to grant relief on the theories it omitted from its findings. *Fielder v. Abel*, 680 S.W.2d 655, 656 (Tex.App.—Austin 1984, no writ).

### b. Application

■ Here, Lucia timely requested findings of fact and conclusions of law and the trial court entered same. But, rather than set forth any findings about the separate and community estates of the litigants, the court merely referred them to the "findings" contained in the judgment. That it could not do. *See Federal Deposit Ins. Corp. v. Morris*, 782 S.W.2d 521, 523 (Tex.App.—Dallas 1989, no writ) (stating that "the trial court may not rely upon a reference back to recitals in the judgment itself to satisfy" a request for findings and conclusions); *Nagy v. First Nat'l Gun Banque Corp.*, 684 S.W.2d 114, 115–16 (Tex.App.—Dallas 1984, writ ref'd n.r.e.) (holding that the court's findings, which simply incorporated that portion of the statement of facts which recited its reasons for deciding as it did, were not in compliance). Nevertheless, no one complained of the error. And, more importantly, the judgment itself did reveal the actual theory upon which the CD and Account were awarded to Michael. In it, the court "confirmed" that the two items were his separate property. Given this, Lucia's failure to object to the court's reference to the findings in the judgment, her failure to request additional findings on the matter, and our additional observation that what was said in the judgment did not conflict with anything in the formal findings entered by the court, we are unable to conclude that Michael waived his claim that the personalty in question was his separate property.

■ In so holding we implicitly recognize that findings contained in a judgment (contrary to Rule 299a) are not shorn of all authority. The rule itself reveals as much. Again, it states that the findings included in the judgment fall against those contained in a separate document, but *only to the extent that they conflict*. This logically indicates that if they *do not* conflict with each other, then those in the judgment have effect. Indeed, to conclude otherwise would be to render meaningless that portion of 299a which dictates how conflicts between the findings are to be resolved. That is, if findings contained in a judgment were irrelevant for all purposes, as suggested in *Valley Mechanical Contractors, Inc. v. Gonzales*, 894 S.W.2d 832 (Tex.App.—Corpus Christi 1995, no writ) and *Boland v. Natural Gas Pipeline Co. of Am.*, 816 S.W.2d 843 (Tex.App.—Fort Worth 1991, no writ), then there would be no reason for the Texas Supreme Court to establish any type of priority between them. Simply put, why establish a hierarchy if one of the two items prioritized is a legal nullity. So, we choose to avoid assigning a frivolous purpose to the Supreme Court's decision to write Rule 299a as it did. *See* TEX. GOV'T.CODE ANN. § 311.021(2) (Vernon 1988) (stating that in construing a statute, it is presumed that the "entire" statute is intended to be effective); *Burrhus v. M & S Supply, Inc.*, 933 S.W.2d 635, 640 (Tex.App.—San Antonio 1996, writ denied) (stating that since rules of procedure have the same force and effect as statutes, they should be construed in much the same way as statutes). So too do we opt to assign meaning and purpose to all the words expressed in the rule. That is done by recognizing that findings in a judgment have probative value as long as they do not conflict with those in a separate document.[3]

### Mischaracterization of Michael's Separate Property

Next, Lucia contends that the evidence is legally and factually insufficient to support the characterization of the CD and Account

---

3. We are not the first to recognize that findings in a judgment still have affect despite Rule 299a. According to the Court of Appeals for the Eighth District, they can be considered in determining whether a litigant was harmed by the court's refusal to enter findings. *Martinez v. Molinar*, 953 S.W.2d 399, 401 (Tex.App.—El Paso 1997, no writ). This is so because they still serve to reveal the basis underlying the trial court's decision even though they are not contained in a separate document. *Id.*

as Michael's separate property. We agree in part and sustain the related point in part.

### a. Authority

■ An attack on the legal sufficiency of a decision will be sustained only when there is no probative evidence to support the decision. In applying this test, we view the evidence and reasonable inferences therefrom in a manner most favorable to the judgment. We also disregard all contrary evidence and inferences. *Estate of Claveria v. Claveria,* 615 S.W.2d 164, 166 (Tex.1981); *Brown v. Lair,* 742 S.W.2d 432, 435 (Tex. App.—Amarillo 1987, no writ). In assessing the factual sufficiency of the evidence, however, our focus is not so narrow. Rather, we examine both the favorable and contradictory evidence with an unbiased eye to determine whether the decision is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Estate of Davis,* 920 S.W.2d 463, 465 (Tex.App.—Amarillo 1996, writ denied).

Next, since the issue before us involves the characterization of the certain property as separate, several other principles are controlling. First, it is presumed that an item possessed by the spouses during marriage or at the dissolution of the marriage is community property. TEX. FAM.CODE ANN. § 3.003(a) (Vernon Pamph.1998). Furthermore, one arguing that it is not has the burden to prove the allegation by clear and convincing evidence. *Id.* at § 3.003(b).[4]

■ Second, when separate and community funds are commingled in a manner defying segregation, it is presumed that the entire fund consists of community property. *Estate of Hanau v. Hanau,* 730 S.W.2d 663, 667 (Tex.1987); *Sibley v. Sibley,* 286 S.W.2d 657, 659 (Tex.Civ.App.—Dallas 1955, writ dism'd w.o.j.). However, the presumption can be dispelled through proof illustrating that the separate properties which went in never came out. This is called tracing. And, in tracing, we indulge in two more presumptions. The first is that the separate funds deposited in the account sink to the bottom, and the second, that community funds are withdrawn first. *See Welder v. Welder,* 794 S.W.2d 420, 434 (Tex.App.—Corpus Christi 1990, no writ) (discussing the concept of tracing); *Sibley v. Sibley,* 286 S.W.2d at 659 (discussing same). In effect, to satisfy the burden of proof imposed on him, the claimant must show that separate funds were deposited into the account and that the balance of the account never reached zero. *See Welder v. Welder,* 794 S.W.2d at 433. Should the claimant do this, then it is presumed that the balance contains separate property equaling the amount of the separate funds initially deposited less withdrawals encroaching upon the deposit or deposits.[5]

### b. Application

#### 1. The CD

■ Michael testified that he purchased the CD with funds given to him as a gift by his grandmother. Because property received as a gift is the separate property of the recipient, TEX. FAM.CODE ANN. § 3.001(2) (Vernon Pamph.1998), the testimony constituted some probative evidence supporting the court's decision to "confirm" that the CD was part of Michael's separate estate. Thus, the determination was legally sufficient.

As to the matter of factual sufficiency, we note Lucia's testimony. She contended that the instrument was not her husband's separate property. This came after admitting that she had "no knowledge of where that certificate of deposit came from." When it is weighed against Michael's testimony, we are unable to say that it was so overwhelming as

---

4. This heightened burden of proof does not alter the standard of review for determining whether the decision had sufficient evidentiary support, however. *Faram v. Gervitz–Faram,* 895 S.W.2d 839, 842 (Tex.App.—Fort Worth 1995, no writ).

5. In application the theory would work like this. Assume that the wife deposited $50 dollars of separate funds into an account that already had $25 of community property. The $50 dollars would sink to the bottom. If a $35 check were then drawn against the account, the remaining $40 would be the wife's separate property. Should another $20 of community monies be deposited and a $40 withdrawal made, then the separate funds of the wife would equal $20. Should that $20 be removed, then the wife's separate property would be depleted even though $100 of community funds was deposited thereafter.

to render the court's determination wrong. Thus, the latter enjoys factually sufficient evidentiary support as well.[6]

### 2. The Account

Michael testified that prior to his marriage he had a savings account at Norwest Bank, which was later converted into the Account. Into it, he made two deposits of funds which he said were his separate property. One deposit, for $10,000, represented a portion of a gift from his father. Another, for $14,678, represented the proceeds from the sale of a house that he owned before his marriage to Lucia. *See* TEX. FAM. CODE ANN. § 3.001(1) (Vernon Pamph.1998) (stating that property owned by a spouse prior to marriage is the spouse's separate property). Receipts manifesting that both of these deposits were made were then admitted into evidence. This constitutes some probative evidence that the $24,678 sum deposited was Michael's separate property.

Also admitted was a summary of the transactions in the Account. According to that exhibit, the balance in the account at the time of marriage was $7,551.99. This sum was separate property given that it was Michael's before the marriage. The lowest this balance sank before the first separate property deposit was made was $4,901.99. Thus, when the $10,000 separate property deposit was made on May 27, 1993, the total amount of separate property in the account was $14,901.99. Between this deposit and the next separate property deposit, the lowest account balance was $7,935.87. When the next, and last, separate property deposit of $14,678.20 was made on July 22, 1993, the amount of separate property in the account rose to $22,614.07.

Throughout the life of the account many other deposits and withdrawals were made. Whether they involved separate or community funds is not revealed in the record. Nev-ertheless, we assume that the withdrawals consumed first the community and then the separate funds. *Welder v. Welder, supra; Sibley v. Sibley, supra.* Next, as the withdrawals of community funds were being made, they encroached on the $22,614.07 balance referred to above. According to the account summary, the balance of the separate property in the Account stood at $17,310.39 as of the date of divorce. And, that sum was the maximum amount which the court could have "confirmed" as Michael's separate property in the Account. Thus, the record is replete with evidence supporting the determination that the Account contained separate funds. Moreover, the contradictory evidence, such as it was, was not of such quantum so as to render the decision wrong.

Nevertheless, according to Michael's amended inventory and appraisement, the total balance in the Account immediately before the final divorce hearing was $18,200.49. As can be seen, the latter sum exceeded the monies subject to being traced as his separate property by $890.10. And, to the extent that the trial court awarded him the $890.10, it did so without any evidentiary support. So, we agree with Lucia's contention that the court's decision to award Michael the Account *in toto* lacked legally sufficient evidentiary support, but our agreement is limited to the $890.10 sum.

### Failure to Properly Divide the Community Estate

The next complaint of Lucia which we address constitutes a sum of all her others. Through it she posits that because the court allegedly mischaracterized the CD and Account as Michael's separate property and failed to enter findings valuing the 48 items of property mentioned above, she was denied a just and right division of the estate. And, because she was allegedly denied such a divi-

6. Lucia refers us to *Kirtley v. Kirtley,* 417 S.W.2d 847 (Tex.Civ.App.—Texarkana 1967, writ dism'd w.o.j.) and *Parmeter v. Parmeter,* 348 S.W.2d 51 (Tex.Civ.App.—Dallas 1961, no writ) as support for the proposition that the uncorroborated testimony of Michael cannot "conclusively" prove that the CD was his separate property. While those two opinions do suggest as much, they also hold that the testimony of an interested witness is enough to warrant submission of the dispute to the fact finder. So, whether or not Michael's testimony alone would have been enough to warrant a directed verdict or summary judgment *vis-a-vis* the character of the CD, it nevertheless constituted evidence upon which the court could rely.

sion, the cause must be remanded. We disagree and overrule the related point.

As discussed above, the court was not obligated to enter the findings alluded to. Furthermore, it did not err in declaring that the CD constituted Michael's separate property. And, to the extent that it erred in declaring that the entire Account comprised a part of his separate estate, the error implicated only $890.10 of the account. Yet, the discrepancy involving the $890.10 does not warrant remand for we can rectify it ourselves. *See* TEX.R.APP. P. 43.3 (authorizing us to enter the judgment which the trial court should have entered).

The parties agreed that each was entitled to half of the community estate, and the court expressly found that a just and fair division would result in giving each spouse half of the community estate. Thus, we will award Lucia an additional $445.05 as her share of the community estate.

### *Error in Dividing Property Irrespective of Its Community or Separate Character*

Finally, Lucia argues that reversal is appropriate since the trial court (as stated in its conclusions of law) divided the property with an eye towards achieving fairness, "irrespective of the characterization of any item of property as either community or separate." In purportedly ignoring the characterization of each item of property, she continues, the court "did not refer to and acted unreasonably in applying the guiding rules and principles of property division under the Texas Family Code." Yet, in making the argument, Lucia fails to direct us to anything which illustrates that the court acted upon the conclusion to which she refers. Nor does our own review of the file indicate as much. Indeed, other than the matters of the CD and Account, Lucia nowhere illustrates that the court gave her ex-husband community or separate property which actually belonged to her or vice versa. And, as to the CD and Account, the trial court correctly "confirmed" that same were the separate property of Michael (save for $819.10 in the Account) and awarded it to him.

So, even if the court improperly stated that it divided the property irrespective of its characterization, nothing indicates that the court *actually* did that. Under that circumstance, we divine no harm. Nor has Lucia cited us to any. Thus, we reject her final proposition as well.

Accordingly, the final decree of divorce is modified to award Lucia $445.05 from Michael as her community share of savings account number 41659–2 at Norwest Bank. In all other things the decree is affirmed.