NO. 07-11-00349-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 29, 2012

_____

IN THE INTEREST OF Y.G. AND Z.G., CHILDREN

_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 78,668-E; HONORABLE DOUGLAS WOODBURN, JUDGE

_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**MEMORANDUM OPINION**

Appellant, Ivan G., appeals the judgment of the trial court terminating his parental rights to the children, Y.G. and Z.G.[1]  For the reasons stated below, we will affirm the judgment of the trial court.

Background

On February 10, 2010, the Department of Family and Protective Services received an intake alleging physical neglect of Y.G. and Z.G.  The intake was based on an observation that the children were dirty and covered with bug bites.  John

_____

[1] Pursuant to Texas Rule of Appellate Procedure 9.8(b), appellant will be referred to as "Ivan" and the children will be referenced by their initials.  The children's mother, a nonparty to this appeal, will be referred to as "Keshia."

Schaumberg was assigned to investigate the case. Schaumberg was able to locate Ivan at the city jail where he was incarcerated for traffic tickets. During an interview with Schaumberg, Ivan admitted that he did not have a steady residence, that he smoked marijuana, and that he had been required to register as a sex offender when he was a juvenile but that he no longer had to register.

Because of a concern for the welfare of the children, the Department filed a petition for orders in aid of investigation of a report of child abuse. On February 24, the trial court issued orders which, *inter alia*, ordered Ivan, Keshia, and the children to submit to a drug screen. Because Ivan and Keshia were uncooperative in allowing the children to be drug tested, the Department removed the children on March 11. Upon their removal, the children were drug tested. Y.G.'s drug test was negative for all illegal drugs, while Z.G. tested positive for both cocaine and marijuana. On March 18, Ivan and Keshia submitted to drug tests. Both tested positive for marijuana.

The Department developed a service plan to allow Ivan to obtain the return of the children. The requirements of the service plan were incorporated into the trial court's Temporary Order Following Adversary Hearing. Additionally, by this order, the trial court independently ordered Ivan to submit to drug tests when requested, participate in a drug assessment, participate in counseling, participate in a psychological evaluation, and participate in parenting classes. The service plan required Ivan to maintain stable housing and to notify the Department if he moved, and also notified Ivan that a failure to take a random drug test on the date requested would be considered a positive test.

Because Ivan failed to comply with the requirements of the service plan and the trial court's order, the case proceeded to trial on August 8, 2011. While evidence was presented during the trial that Ivan had initiated many of the services required under the service plan and the trial court's order, he did not really begin making progress toward accomplishing these requirements until the last few months before trial. By the time of trial, Ivan had not completed the psychological evaluation, ACADA drug treatment program, or counseling required by the service plan and order. In addition, Ivan had only taken two of eight requested random drug tests. Finally, over the year and a half that the Department was involved in this case before trial, Ivan had six different addresses and failed to notify the Department of any of these new addresses. After hearing the evidence, the trial court issued an order terminating Ivan's parental rights to Y.G. and Z.G. based on findings that Ivan had violated Texas Family Code section 161.001(1)(D),(E), (I), and (O), and that termination is in the children's best interest. See TEX. FAM. CODE ANN. § 161.001 (West Supp. 2011).[2] It is from this order of termination that Ivan appeals.

Ivan presents six issues by his appeal. The first four issues challenge the legal and factual sufficiency of the evidence supporting the trial court's findings that Ivan violated section 161.001(1)(D), (E), (I), and (O). By his fifth issue, Ivan challenges the trial court's findings of fact and conclusions of law as lacking sufficient specificity since the trial court failed to identify the specific actions by which Ivan violated section 161.001(1). Finally, by his sixth issue, Ivan challenges the legal and factual sufficiency

---

[2] Further reference to the Texas Family Code will be by reference to "section ___" or "§ ___."

3

of the trial court's determination that termination of Ivan's parental rights is in the children's best interest.

## Standard of Review in Termination Cases

The natural right existing between parents and their children is of constitutional dimension. Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985); see Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). A decree terminating this natural right is complete, final, irrevocable, and divests for all time that natural right as well as all legal rights, privileges, duties, and powers between the parent and child except for the child's right to inherit. Holick, 685 S.W.2d at 20. As such, we are required to strictly scrutinize termination proceedings. In re G.M., 596 S.W.2d 846, 846 (Tex. 1980). However, parental rights are not absolute, and the emotional and physical interests of a child must not be sacrificed merely to preserve those rights. In re C.H., 89 S.W.3d 17, 26 (Tex. 2002).

Due process requires the application of the clear and convincing standard of proof in cases involving involuntary termination of parental rights. In re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2008). This standard, which focuses on whether a reasonable jury could form a firm belief or conviction, retains the deference a reviewing court must have for the factfinder's role. In re C.H., 89 S.W.3d at 26.

The law in Texas is that a court may order termination of parental rights if the petitioner establishes one or more acts or omissions enumerated under subsection (1) of section 161.001, and that termination of the parent-child relationship is in the best interest of the child. § 161.001. Though evidence may be relevant to both elements, each element must be proven, and proof of one does not relieve the burden of proving the other. See In re C.H., 89 S.W.3d at 28; Holley v. Adams, 544 S.W.2d 367, 370 (Tex. 1976). While both a statutory violation and that termination is in the best interest of the child must be proven, only one statutory ground is required to terminate parental rights under section 161.001. In re N.R., 101 S.W.3d 771, 775 (Tex.App.—Texarkana 2003, no pet.) (citing In re S.F., 32 S.W.3d 318, 320 (Tex.App.--San Antonio 2000, no pet.)). Therefore, we will affirm the termination order if there is legally and factually sufficient evidence of any statutory violation and that termination of parental rights would be in the best interest of the child. See id.

In reviewing the legal sufficiency of the evidence supporting an order terminating parental rights, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction as to the truth of the allegations sought to be established. See § 101.007; In re J.F.C., 96 S.W.3d at 266. "To give appropriate deference to the factfinder's conclusions and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." In re J.F.C., 96 S.W.3d at 266. In other words, we will

disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible.  Id.

The standard for reviewing the factual sufficiency of termination findings is "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department's] allegations."  In re C.H., 89 S.W.3d at 25.  In conducting this review, we are directed to consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding.  In re J.F.C., 96 S.W.3d at 266.  "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient."  Id.

The Trial Court's Findings

In addition to finding that termination of Ivan's parental rights to Y.G. and Z.G. is in the children's best interest, the trial court also found that Ivan:

(1) Knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children;

(2) Engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children;

(3) Contumaciously refused to submit to a reasonable and lawful order of a court under Subchapter D, Chapter 261, Texas Family Code; and

(4) Failed to comply with the provisions of a court order that specifically established the actions necessary for the father to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a

6

result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the children.

See § 161.001(1)(D), (E), (I), (O), (2).

Section 161.001(1)(O)

Section 161.001(1)(O) supports termination of parental rights when a parent fails to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain return of the child who has been in the permanent or temporary managing conservatorship of the Department for at least nine months as a result of the child's removal for abuse or neglect. § 161.001(1)(O). Ivan does not dispute that Y.G. and Z.G. were removed from his care because of abuse or neglect, or that the Department was managing conservator of the children for the requisite nine-month period. Ivan also admits that he did not complete the services that were required under the service plan and the trial court's order.[3] Rather, Ivan contends that he "either initiated, participated in, and/or completed all services" required by the service plan and court order, or that he should be excused from failing to comply because of intervening causes that prevented him from completing the services.

The trial court's Temporary Order Following Adversary Hearing specifically required Ivan to take certain actions to obtain the return of his children, including counseling, psychological and/or psychological evaluation and treatment, parenting classes, drug assessment, random drug testing, and compliance with the Department's

---

[3] The Department's service plan was incorporated into the trial court's Temporary Order Following Adversary Hearing and, thus, constitutes a court order that specifically establishes the actions necessary for Ivan to obtain return of Y.G. and Z.G. See § 161.001(1)(O).

7

service plan. The service plan required Ivan to, *inter alia*, maintain a drug-free lifestyle, maintain stable housing and employment, and notify the Department of any change of address within five days of the change. The service plan also specifically designated Kaye Renshaw as the counselor and Dr. Kleinpeter as the psychologist that Ivan was to work with under the trial court's order.

In his brief, Ivan concedes that he did not comply with all of these requirements. While Ivan did complete parenting classes, he admits that he changed housing on six different occasions throughout the pendency of this case, had not completed drug treatment through ACADA, had completed only three of eight counseling sessions with Renshaw, and had not been treated psychologically. Ivan contends that these failures to comply with the trial court's order were excused due to circumstances beyond his control or that he substantially complied with the service requirements.

Ivan contends that his having six different housing arrangements during the one and a half year pendency of this suit cannot be considered inappropriate stability because the Department moved the children on six occasions of their own during the same period. Clearly, however, Ivan's argument is comparing apples to oranges. The service plan required Ivan to maintain stable housing, which he did not do. Notably, Ivan does not attempt to explain why he had so many different housing arrangements over such a short period of time.[4] Further, the Department's case worker testified that Ivan failed to notify the Department of any of these changes of address.

---

[4] By contrast, the Department provided evidence regarding why it was necessary for the Department to change the children's placement.

8

Ivan contends that he participated in a drug abuse assessment through ACADA, and that the assessment was all that was ordered by the trial court. While the trial court's order specifically ordered Ivan to have a drug assessment performed, the order did incorporate the Department's service plan. The service plan required Ivan to complete an ACADA assessment and to "follow any and all recommendations made by the assessment." By his testimony, Ivan admitted that he had not completed his program with ACADA. As such, Ivan did not comply with the service plan that was incorporated into the trial court's order.

As to the counseling requirement, Ivan contends that he initiated and completed three counseling sessions before the counselor terminated further services. Ivan explained that, due to transportation problems,[5] he arrived at his counseling sessions late, so Renshaw terminated further counseling services. However, the Department's case worker testified that Renshaw would not have terminated further counseling with Ivan unless he failed to attend or was significantly late to two scheduled counseling sessions. The case worker testified that Ivan did not attend any counseling sessions with Renshaw and that it was his complete failure to participate in counseling that led to Renshaw's termination of counseling. Regardless, nothing in the record suggests that Ivan contacted the Department in an effort to obtain a referral to counseling with another counselor.

Ivan contends that he initiated and participated in his psychological evaluation with Dr. Kleinpeter, but that he was prevented from completing these services due to

---

[5] Evidence was presented that the Department offered to provide Ivan transportation, but that he refused such offer.

9

the death of Dr. Kleinpeter. Following Dr. Kleinpeter's death, Ivan acknowledged that the Department referred him to a Dr. Basham for evaluation and treatment. However, Ivan failed to schedule or attend any sessions with Dr. Basham. On appeal, Ivan contends that he is excused from the requirement that he see Dr. Basham because the trial court's order did not require Ivan to consult with Dr. Basham. However, the trial court's order requires Ivan to submit to an evaluation and treatment with "a licensed psychologist and/or psychiatrist." The evidence establishes that the Department selected Dr. Basham to be this licensed psychologist and/or psychiatrist after the death of Dr. Kleinpeter, and that Ivan was aware of such selection but that he failed to comply with the trial court's order.

Ivan appears to contend that his initiation of and participation in required services is evidence of substantial compliance with the service plan and court order, and that such action is enough to preclude the trial court from finding that Ivan violated section 161.001(1)(O). However, substantial compliance with the provisions of a court order is not sufficient to avoid a finding under section 161.001(1)(O). In re D.S.C. V, No. 07-11-0287-CV, 2011 Tex.App. LEXIS 9551, at *5 (Tex.App.—Amarillo Dec. 6, 2011, no pet.) (mem. op.); In re C.M.C., 273 S.W.3d 862, 875 (Tex.App.—Houston [14th Dist.] 2008, no pet.) (op. on reh'g); In re T.T., 228 S.W.3d 312, 319 (Tex.App.—Houston [14th Dist.] 2007, pet. denied).

In addition, Ivan contends that his lack of transportation and the death of Dr. Kleinpeter excuse certain of his failures to comply with the trial court's order. However, we find these excuses to be insufficient to justify Ivan's failure to comply with the

requirements of the trial court's order.  See In re D.S.C. V, 2011 Tex.App. LEXIS 9551, at *5 ("The excuses offered by him are just that and do not prevent a finding that he did not comply with the plan."); In re C.M.C., 273 S.W.3d at 874-75 (section 161.001(1)(O) does not make provision for excuses); In re T.N.F., 205 S.W.3d 625, 631 (Tex.App.—Waco 2006, pet. denied) (same); Wilson v. State, 116 S.W.3d 923, 929 (Tex.App.—Dallas 2003, no pet.) (excuse does not create a fact issue as to compliance).  We find Ivan's excuses especially ineffectual considering the uncontroverted evidence that the Department offered Ivan transportation, which he refused, and, following the death of Dr. Kleinpeter, the Department informed Ivan that he could comply with the psychologist or psychiatrist requirement by scheduling an appointment with Dr. Basham.

However, beyond Ivan's claims of substantial compliance and his excuses for his failure to comply with the trial court's order, Ivan provides no excuse or claim of substantial compliance regarding his failure to comply with the requirements that he maintain stable housing and that he submit himself to random drug screens when requested by the Department.  As addressed above, Ivan had at least six different housing arrangements during the year-and-a-half pendency of this case, even though the service plan required him to maintain stable housing.  Additionally, both the service plan and the trial court's order required Ivan to submit to drug screens when requested by the Department.  However, the evidence is undisputed that Ivan refused six of eight random drug screens requested by the Department.

Viewing all of the evidence in the light most favorable to the trial court's finding under section 161.001(1)(O), we conclude that a reasonable trier of fact could have

11

formed a firm belief or conviction that Ivan failed to comply with the provisions of a court order that specifically established the actions necessary for him to obtain return of the children. Further, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is not so significant that a factfinder could not reasonably have formed a firm belief or conviction that Ivan failed to comply with the provisions of the trial court's order. Consequently, we overrule Ivan's fourth issue.

As only one statutory ground is required to terminate parental rights under section 161.001, see In re N.R., 101 S.W.3d at 775, we need not address Ivan's first, second, or third issues. See TEX. R. APP. P. 47.1.

### Best Interest of the Children

However, even after finding the evidence sufficient to support a finding under section 161.001(1), we must still address Ivan's sixth issue which challenges the sufficiency of the evidence to support the trial court's determination that termination of the parent-child relationship between Ivan and the children is in the children's best interest. See § 161.001(2).

There is a strong presumption that the best interest of a child is served by keeping the child with its natural parent, and the Department bears the burden to rebut that presumption. In re C.M.C., 273 S.W.3d at 876; In re S.M.L., 171 S.W.3d 472, 480 (Tex.App.—Houston [14th Dist.] 2005, no pet.). In deciding what is in a child's best interest, we will consider numerous factors, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the

individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. Holley, 544 S.W.2d at 371-72. It is not necessary that each factor favor termination, In re P.E.W., 105 S.W.3d 771, 780 (Tex.App.—Amarillo 2003, no pet.), and the list is not exclusive. In re C.J.F., 134 S.W.3d 343, 354 (Tex.App.—Amarillo 2003, pet. denied). To support the termination, there must be evidence from which a factfinder could reasonably form a firm conviction or belief that the termination was in the child's best interest. In re D.S.A. 113 S.W.3d 567, 574 (Tex.App.—Amarillo 2003, no pet.).

The need for permanence is a compelling consideration in determining a child's present and future physical and emotional needs. In re T.D.C., 91 S.W.3d 865, 873 (Tex.App.--Fort Worth 2002, pet. denied); see In re S.H.A., 728 S.W.2d 73, 92 (Tex.App.--Dallas 1987, writ ref'd n.r.e.). In the present case, Ivan's actions led to the Department removing the children. Further, since the time of the removal, Ivan has not taken actions consistent with being able to provide the children with the sort of stable and healthy environment that would suggest that the Department would not likely need to remain involved in the children's lives. Ivan has not maintained stable housing or employment, he has not availed himself of services offered through the Department, and he continues to use drugs.[6] Drug use during the pendency of a termination

---

[6] While Ivan submitted to the final drug screen before trial and tested negative for all illegal drugs, he tested positive for marijuana on his first test and then failed to submit to six drug screens requested by the Department. Ivan's failure to submit to these drug screens are in direct contravention of the trial court's order and, under the express

proceeding is evidence of an inability to provide a stable environment for a child and for the child's emotional and physical needs. In re F.A.R., No. 11-04-00014-CV, 2005 Tex.App. LEXIS 234, at *11-12 (Tex.App.--Eastland Jan. 13, 2005, no pet.) (mem. op.). For these reasons, we conclude that the evidence on the factor of the emotional and physical needs of the children weighs in favor of termination of Ivan's parental rights.

Further, Ivan's failure to avail himself of the services offered through the Department during most of the time that this case was pending suggests that Ivan would not avail himself of programs available to assist him in caring for the children. Even were we to conclude that Ivan would avail himself of programs, no evidence was offered of any programs that are available to Ivan. The evidence regarding programs available to Ivan weighs in favor of termination of Ivan's parental rights.

Other than pledging to support his children with his social security disability benefits and to enlist the help of family members to help him provide a safe environment for the children, Ivan presented no concrete plans for the children. By contrast, the Department has placed the children in a foster home in which the children have bonded well with the foster mother. Further, the foster home in which the children have been placed is open to adoption if the parental rights of Ivan and Keshia are terminated.

---

terms of the service plan, constitute positive results. As such, the evidence supports a determination that Ivan tested positive on the first seven drug screens, and only tested negative on the final drug screen before trial. Evidence of a recent change in behavior should be determinative only when it is reasonable to conclude that rehabilitation, once begun, will surely continue. In re M.G.D., 108 S.W.3d 508, 514 (Tex.App.—Houston [14th Dist.] 2003, pet. denied). Considering Ivan's reluctance to avail himself of the services offered to him until the final months before trial, it is not reasonable to conclude that Ivan's drug rehabilitation will surely continue.

Consequently, the evidence regarding the parties' plans for the children weighs slightly in favor of termination.

Viewing all of the evidence in the light most favorable to the trial court's best interest finding, we conclude that the evidence is such as to allow a reasonable trier of fact to form a firm belief or conviction that the termination of Ivan's parental rights to Y.G. and Z.G. is in the children's best interest. Likewise, we conclude that the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is not so significant that a factfinder could not reasonably have formed a firm belief or conviction that it is in the children's best interest to terminate Ivan's parental rights. Consequently, we overrule Ivan's sixth issue.

Findings of Fact and Conclusions of Law

Finally, Ivan's fifth issue contends that the trial court's findings of fact and conclusions of law are insufficient because they do not specifically identify any action taken by Ivan that violated section 161.001(1). Rather, according to Ivan, these findings of fact and conclusions of law attempt to justify termination solely on the basis of the children's best interest. Because termination requires a finding that the parent violated at least one of the section 161.001(1) subsections and that termination is in the best interest of the children, see In re A.V., 113 S.W.3d 355, 362 (Tex. 2003), Ivan contends that the trial court's findings of fact and conclusions of law are insufficient to support termination of his parental rights.

However, Ivan's dissatisfaction with the findings and conclusions filed by the trial court could have been remedied had he filed a request for additional findings and

conclusions.  See Tᴇx. R. Cɪv. P. 298.  Because Ivan failed to avail himself of this remedy and bring this defect to the attention of the trial court, he has waived his ability to complain of the trial court's findings of fact and conclusions of law on appeal.  See In re Q.W.J., No. 07-10-0075-CV, 2011 Tex.App. LEXIS 6635, at *9-10 (Tex.App.— Amarillo Aug. 18, 2011, no pet.); Hill v. Hill, 971 S.W.2d 153, 157 (Tex.App.—Amarillo 1998, no pet.).  As such, we overrule Ivan's fifth issue.

Conclusion

Having overruled each of Ivan's appellate issues, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice